## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**JESUS RIVERA**, *et al.*,

      **Plaintiffs,**

**v.**                              **No. 3:23-CV-24547-TKW-HTC**

**FEDERAL BUREAU OF
INVESTIGATION**, *et al.*,

      **Defendants.**

_____

## GOVERNMENT DEFENDANTS' MOTION TO DISMISS
## AND SUPPORTING MEMORANDUM

Defendants Federal Bureau of Investigation and United States Department of Justice and defendants Merrick Garland and Christopher A. Wray in their official capacities as Attorney General of the United States and Director of the Federal Bureau of Investigation (together, the "Government Defendants"),[1] by and through undersigned counsel, hereby move to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The grounds for

_____

[1] This motion is not submitted on behalf of Garland and Wray insofar as they are sued in their personal capacities, and undersigned counsel does not represent them for that purpose. They retain their rights to move or plead separately and to raise any defenses available to them. To the undersigned's knowledge, Plaintiffs have not served, or filed returns of service for, Garland and Wray in their individual-capacity as required by Federal Rule of Civil Procedure 4(i)(3).

this motion are set forth in the supporting memorandum below. Under Local Rule 7.1(D), no certificate of attorney conference is required because this motion would determine the outcome of the case and the plaintiffs' claims.

## MEMORANDUM OF LAW

Plaintiffs claim that the Government Defendants "violated [their] constitutional rights by illegally and unconstitutionally surveilling them in violation of the strictures and legislated terms of Section 702 of the Foreign Intelligence Surveillance Act." Complaint, ECF No. 1 ("Compl.") ¶ 71. Plaintiffs' claim should be dismissed for lack of subject matter jurisdiction because the well-pleaded allegations of the complaint do not establish that Plaintiffs have standing to bring such a claim. Specifically, Plaintiffs offer only a conclusory allegation that they were illegally surveilled and thus fail to plausibly allege an injury in fact. Further, to the extent Plaintiffs seek monetary damages, their claim against the Government Defendants should be dismissed because Congress has not waived the United States' sovereign immunity for such monetary claims. Finally, to the extent Plaintiffs purport to bring a claim for relief under Section 702, the complaint should be dismissed because Plaintiffs have not pleaded any cognizable cause of action.

# BACKGROUND

## I.       Statutory Background

In 2008, Congress amended the Foreign Intelligence Surveillance Act ("FISA") and enacted Section 702. *See* FISA Amendments Act of 2008 ("FAA"), Pub. L. No. 110-261, 122 Stat. 2436. Section 702 of FISA, 50 U.S.C. § 1881a, "supplement[ed] pre-existing FISA authority by creating a new framework under which the Government may seek the [Foreign Intelligence Surveillance Court's ('FISC's')] authorization of certain foreign intelligence surveillance targeting the communications of non-U.S. persons located abroad." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 404 (2013). In 2018, Congress amended Section 702, adding provisions related to the querying of information collected pursuant to that authority, specifying certain limits on the use of such information, and revising various provisions regarding disclosures to the FISC and Congressional review. *See* FISA Amendments Reauthorization Act of 2017, Pub. L. No. 115-118, 132 Stat. 3 (2018).

Section 702 generally provides that, upon FISC approval of targeting and minimization procedures and a "certification" submitted by the Government, the Attorney General and the Director of National Intelligence ("DNI") may jointly authorize, for up to one year, the "targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information." 50 U.S.C. § 188la(a), (h). The Government must acquire the information from or with

the assistance of an electronic communication service provider, to which end the Attorney General and the DNI may issue "directives" to providers compelling their assistance in the acquisition of the targeted communications. *Id.* § 1881a(h)(2)(A)(vi), (i)(1). Under the express terms of Section 702, the Government cannot intentionally target a U.S. person overseas or persons (including U.S. persons) known at the time of acquisition to be in the United States. *Id.* § 1881a(b). The acquisition must also be "conducted in a manner consistent with the [F]ourth [A]mendment." *Id.* § 1881a(b)(6).

With respect to communications that have been collected under Section 702, the Attorney General, in consultation with the Director of National Intelligence, must "adopt querying procedures consistent with the requirements of the [F]ourth [A]mendment." *Id.* § 1881a(f)(1)(A). Queries involve accessing information from government databases; they do not constitute surveillance, create new collection, or retrieve information that is not already in the possession of the agency. *See generally* Privacy and Civil Liberties Oversight Board, *Report on the Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance Act* at 6, September 28, 2023, *available at* https://perma.cc/4VAJ-NENM ("Agencies conduct queries to search through unminimized data that has already been lawfully collected and identify pertinent information. Hence, a query does not cause the government to obtain any new communications."). Rather, they are a means to more

4

efficiently review already lawfully collected information. *See* Office of the Director of National Intelligence, Office of Civil Liberties, Privacy, and Transparency, *Annual Statistical Transparency Report Regarding the Intelligence Community's Use of National Security Surveillance Authorities* at 19, April 2023, *available at* https://www.dni.gov/files/CLPT/documents/2023_ASTR_for_CY2022.pdf ("A query is a basic analytic step foundational to efficiently and effectively reviewing data lawfully collected and already in the government's possession."). Generally, "the [FBI] may not access the contents of communications acquired under [Section 702] that were retrieved pursuant to a query made using a United States person query term that was not designed to find and extract foreign intelligence information unless-- (i) the [FBI] applies for an order of the [FISC] . . .; and (ii) the [FISC] enters an order . . . approving such application." 50 U.S.C. § 1881a(f)(2)(A).

## II.    Factual Background[2]

Plaintiffs are U.S. citizens who reside in Florida, California, and New York. Compl. ¶¶ 3, 4, 9, 13, 14. On January 6, 2021, Plaintiffs allege that they and many others gathered in Washington, D.C. "to peaceably assemble" and "petition [the] government for redress of grievances over the 2020 presidential election and

---

[2] The facts set forth here are taken from the well-pleaded allegations of the complaint, documents incorporated in the complaint by reference, and material of which the court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

government corruption in general." *Id.* ¶ 25. Some people who gathered with Plaintiffs "chose to enter and engage in acts of violence in the U.S. Capitol," but Plaintiffs were not among those who engaged in violence. *Id.* ¶ 29.[3]

An April 21, 2022 opinion of the FISC, addressing the "Government's Ex Parte Submission of Reauthorization Certifications and Related Procedures, Ex Parte Submission of Amended Certifications, and Request for an Order Approving Such Certifications and Amended Certifications," noted a number of instances since September 2, 2021 in which the FBI had violated its own querying standard for unminimized FISA information, "including several relating to the January 6, 2021 breach of the U.S. Capitol." *See* Ex. A, FISC Mem. Op. & Order at 1, 28 (Apr. 21, 2022) ("FISC Op.") (referenced in Compl. ¶¶ 44-45). The New York Times reported on the existence and content of this FISC memorandum opinion and order in an article dated May 19, 2023. Charlie Savage, *F.B.I. Violated Surveillance Program Rules After George Floyd Protests and Jan. 6 Attack*, N.Y. Times (May 19, 2023), https://www.nytimes.com/2023/05/19/us/politics/fbi-violated-surveillance-program-rules.html (referenced in Compl. ¶ 39).

---

[3] Since then, each Plaintiff has been criminally charged for their participation in the riot at the United States Capitol on January 6, 2021, and Plaintiff Rivera has been convicted and his conviction has been affirmed on appeal. *United States v. Purdy, et al.*, 1:22-cr-19 (D.D.C.); *United States v. Massaquoi*, 1:23-cr-421 (D.D.C.); Findings of Fact and Conclusions of Law, *United States v. Rivera*, 1:21-cr-60 (D.D.C. June 17, 2022), ECF No. 62; Judgment, *United States v. Rivera*, 22-3088 (D.C. Cir. Dec. 12, 2023), ECF No. 2031029.

### III.   Procedural Background

On September 20, 2023, Plaintiffs filed the instant suit, styled as a putative class action. Compl. at 2. Against the Government Defendants, Plaintiffs bring a single cause of action,[4] alleging that the Government Defendants "violated Plaintiffs' constitutional rights by illegally and unconstitutionally surveilling them in violation of the strictures and legislated terms of Section 702 of the Foreign Intelligence Surveillance Act." Compl. ¶ 71. Plaintiffs do not specify which provision of the U.S. Constitution the Government Defendants allegedly violated, but they assert that Plaintiffs "suffered harm in the form of having their Section 702 and constitutional rights violated, their business and property have been violated, and their freedom of speech and association have been severely compromised." *Id.* ¶ 74. Plaintiffs seek damages and injunctive relief. *Id.* at 15-16.

---

[4] Against Defendants "Wray" and "Garland," Plaintiffs also bring two putative constitutional claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Compl. ¶¶ 53-68. *Bivens* claims may not be brought against government agencies or officers in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994) (holding that *Bivens* actions may not be brought against federal agencies); *Nalls v. BOP*, 359 F. App'x 99, 100 (11th Cir. 2009) (unpublished) ("Official capacity suits are, in reality, suits against the official's agency/entity." (citing *Kentucky v. Graham*, 473 U.S. 159 (1985))). Thus, the Government Defendants understand counts 1 and 2 to be brought against Wray and Garland in their personal capacities only.

## STANDARD OF REVIEW

"'Federal courts are courts of limited jurisdiction' and 'possess only that power authorized by Constitution and statute.'" *Bishop v. Reno*, 210 F.3d 1295, 1298 (11th Cir. 2000) (citation omitted). Where plaintiffs fail to demonstrate a court's subject matter jurisdiction, dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1). *Langston v. Tex. Cap. Bank, Nat'l Ass'n,* No. 8:20-CV-2954-VMC-AAS, 2021 WL 698171, at *2 (M.D. Fla. Feb. 23, 2021). Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citation omitted). Facial attacks on subject matter jurisdiction are based on the allegations of the complaint and thus are subject to the same standard of review as Rule 12(b)(6) motions. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies the plausibility standard when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that

8

alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Although "Rule 8 [of the Federal Rules of Civil Procedure] marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. In evaluating the sufficiency of the complaint, the Court may consider the facts alleged in the complaint, documents incorporated in the complaint by reference, and matters of which the Court may take judicial notice. *Tellabs*, 551 U.S. at 322.

## ARGUMENT

### I.     Plaintiffs' Claim Should Be Dismissed for Lack of Standing.

"[T]he judicial power of the United States" is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper*, 568 U.S. at 408 (quotation marks and citations omitted).

To establish Article III standing, a plaintiff must seek relief from an injury in fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id.* at 409 (citation omitted). The Supreme Court has emphasized that the standing inquiry must be "especially rigorous" when reaching the merits of a case would force a court to decide whether actions taken by the other branches of the federal government, especially in the fields of intelligence gathering and foreign affairs, are unconstitutional. *Id.*

With respect to the injury-in-fact requirement, "a plaintiff must set forth general factual allegations that 'plausibly and clearly allege a concrete injury,' . . . and that injury must be 'actual or imminent, not conjectural or hypothetical.'" *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337-38 (11th Cir. 2021) (quoting *Thole v. U. S. Bank N.A.*, 590 U.S. ——, 140 S. Ct. 1615, 1621 (2020), and *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). "Mere conclusory statements do not suffice." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 678). Moreover, a plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." *31 Foster Child. v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003).

Plaintiffs lack standing for their challenge to purported Section 702 surveillance because they do not plausibly allege that their communications have been, are being, or will be collected via that authority. As noted above, Section 702 of FISA does not permit the targeting of U.S. persons or persons in the United States, 50 U.S.C. § 1881a(b), and Plaintiffs offer no allegations sufficient to support a reasonable inference that, contrary to the statute, the Government has targeted, is targeting, or will target their communications under Section 702. Nor have Plaintiffs plausibly alleged that their communications have been, are being, or will be acquired incidental to the targeting of non-U.S. persons reasonably believed to be located outside the United States, let alone that they are suffering any injury in connection with such surveillance. Plaintiffs baldly assert that the Government Defendants "intentionally abused and illegally used this surveillance tool," Compl. ¶ 43, and "surveill[ed] them in violation of the strictures and legislated terms of Section 702," *Id.* ¶ 71. However, these statements are "no more than conclusions," and they therefore "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Plaintiffs' allegations regarding FBI "querying" incidents detailed in the April 2022 FISC opinion do nothing to remedy this defect. Compl. ¶¶ 44-45. The cited FISC opinion describes incidents in which the FBI violated its own standards for

querying FISA information,[5] and notes that in some of these incidents, the FBI queried names of individuals who, like Plaintiffs, were present at the U.S. Capitol on January 6, 2021.[6] *Id.*; *see* FISC Op. at 28-29. But even assuming the history of these improper querying incidents, and even if Plaintiffs had plausibly alleged that their own names were among those queried (which they have not), Plaintiffs have not plausibly alleged any "concrete, particularized and actual or imminent" injury. *Clapper*, 568 U.S. at 409 (citation omitted). None of the cited criticisms of the FBI's querying practices in the April 2022 FISC opinion indicates that Government surveillance under Section 702 targeted—or even incidentally collected—communications from *any* individuals involved in the events in and around the Capitol on January 6, 2021, let alone those of Plaintiffs. With respect to persons in and around the Capitol on January 6, 2021, the sources cited by Plaintiffs do not describe actual surveillance (which is prohibited by Section 702 in any event), but only queries using terms associated with unspecified individuals involved in the January 6 events. *See* FISC Op. at 28-29.[7] Thus, Plaintiffs have not plausibly alleged

---

[5] The opinion indicates that some, but not all, of these incidents involved querying of information collected pursuant to Section 702. FISC Op. at 26 n.5.

[6] With respect to the incidents referenced by Plaintiffs for which the FISC opinion notes that Section 702 information specifically was queried, the opinion states that "[n]o raw Section 702 information was accessed as a result of these queries." FISC Op. at 29.

[7] While the FISC opinion criticizes the FBI for violations of its querying procedures, the Government Defendants note that querying the names of U.S. persons is not prohibited by Section 702. Indeed, Section 702 explicitly contemplates permissible

that their communications were even acquired under Section 702, let alone that the Government has subsequently queried such communications. Rather, Plaintiffs' allegation that they were surveilled under Section 702 is pure speculation, Compl. ¶ 71, and they lack standing for their constitutional claim challenging such surveillance.

Indeed, the Supreme Court's holding in *Clapper v. Amnesty International* squarely forecloses a conclusion that Plaintiffs have standing for their challenge to purported Section 702 surveillance. In *Clapper*, the Supreme Court concluded that the plaintiffs lacked standing to seek an injunction against surveillance authorized under Section 702, holding, *inter alia*, that their theory of injury was "too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" 568 U.S. at 401 (citation omitted). The plaintiffs' claim in that case in fact was supported by more detailed assertions than Plaintiffs offer here—including that they interacted and engaged in sensitive communications with persons abroad likely to be considered by the Government as potential terrorists, or persons of interest in terrorism investigations. *See id.* at 406. They further alleged they would suffer harms as a result of the Government surveillance program, including a compromised ability to "locate witnesses, cultivate sources, obtain information, and

U.S. person queries of Section 702-acquired information. *See, e.g.*, 50 U.S.C. § 1881a(f)(1)(B).

communicate confidential information," and a need to undertake various costly measures to avoid possible surveillance. *Id.* at 406-07. The Supreme Court, however, held that the plaintiffs' claimed injuries rested on a "speculative chain of possibilities," *id.* at 414, including that "the Government [would] decide to target the communications of non-U.S. persons with whom they communicate," that it would succeed in intercepting those communications, and that the plaintiffs would be parties to the particular communications that would be intercepted. *Id.* at 410.

Here, Plaintiffs' claim does not even rest on a speculative chain of possibilities, but rather the single bald assertion that their constitutional rights were violated by unlawful surveillance conducted under Section 702. Compl. ¶ 71; *see also id.* ¶¶ 20-21, 39, 43. Courts have repeatedly rejected for lack of standing challenges to purported Government surveillance that rest on such bare speculation, including several claims brought by Plaintiffs' counsel, Larry Klayman. *See, e.g.*, *Klayman v. Nat'l Sec. Agency*, 280 F. Supp. 3d 39, 56-57 (D.D.C. 2017) (holding that Klayman lacked standing to challenge "PRISM" surveillance conducted under Section 702 even though he alleged that he "frequents and routinely telephones and e-mails individuals and high-ranking government officials in Israel" and communicates with persons in several other nations), *aff'd sub nom. Klayman v. Obama*, 759 F. App'x 1 (D.C. Cir. 2019); *see also Corsi v. Mueller*, 422 F. Supp. 3d 51, 63-64 (D.D.C. 2019) (detailing Klayman's history of "bring[ing claims of illegal

14

surveillance identical to or even more deficient than the claims alleged by the plaintiffs in *Clapper*" and concluding that plaintiff Jerome Corsi's claim of illegal Section 702 surveillance was based on an "even more deficient allegation"), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020); *Montgomery v. Comey*, 300 F. Supp. 3d 158, 167-68 (D.D.C. 2018) (holding that "plaintiffs' standing to challenge defendants' alleged surveillance under the PRISM program [was] clearly foreclosed" by *Clapper* where plaintiffs had not alleged that they communicated with individuals abroad, "let alone that they have reason to believe that their foreign contacts have been targeted under the PRISM program"), *aff'd as modified*, 752 F. App'x 3 (Mem) (D.C. Cir. 2019); *Klayman v. Obama*, 957 F. Supp. 2d 1, 8 n.6 (D.D.C. 2013) (explaining that *Clapper* "squarely dictated" that the plaintiffs lacked standing to "challenge the Government's targeted collection of internet data content pursuant to Section 702" because plaintiffs had not "alleged sufficient facts to show that the NSA has targeted any of their communications" (emphasis omitted)), *vacated & remanded on other grounds*, 800 F.3d 559 (D.C. Cir. 2015).

In sum, Plaintiffs' conclusory allegation that they were unlawfully surveilled does not plausibly allege an injury in fact, let alone a current or imminent future injury, and the complaint alleges no other purported injury sufficient for Article III standing. Accordingly, Plaintiffs' claim against the Government Defendants should be dismissed for lack of subject matter jurisdiction.

## II.    Plaintiffs' Claim for Monetary Damages Should Be Dismissed Because There Is No Applicable Waiver of Sovereign Immunity.

To the extent Plaintiffs seek monetary damages against the Government, *see* Compl. at 15-16, their constitutional claim also should be dismissed for lack of subject matter jurisdiction because the Government has not waived its sovereign immunity with respect to such claims. The federal government may only be sued where Congress has expressly waived its sovereign immunity. *Meyer*, 510 U.S. at 475. Absent such a waiver, district courts lack jurisdiction over the claim. *Id.*; *Zelaya v. United States*, 781 F.3d 1315, 1321–22 (11th Cir. 2015). "The United States has not waived sovereign immunity with respect to constitutional claims seeking monetary damages." *Owens v. Bowen*, No. CV-07-RRA-2236-S, 2009 WL 10688072, at *3 (N.D. Ala. Feb. 4, 2009) (citing *Harbert v. United States*, No. 10797, 2006 WL 3298385 (11th Cir. Nov. 14, 2006) and *Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972)), *report & recommendation adopted*, No. CV 07-S-2236-S, 2009 WL 10688024 (N.D. Ala. Feb. 27, 2009). Accordingly, any claim for damages against the Government Defendants must be dismissed.

## III.    Plaintiffs Have No Cause of Action Under Section 702.

Plaintiffs' sole cause of action against the Government Defendants asserts that the Government Defendants "violated Plaintiffs' constitutional rights by . . . surveilling them in violation of the strictures and legislated terms of Section 702." Compl. ¶ 71; *see also id.* ¶¶ 72, 73, 74. However, the cause of action is labeled

"Violation of Section 702 of the Foreign Intelligence Surveillance Act," *id.* at 14, and it is unclear whether Plaintiffs also purport to bring a statutory claim. To the extent Plaintiffs purport to bring a claim under Section 702 itself, Plaintiffs not only lack standing, *see supra* Part I, they also lack a cognizable cause of action.

"[P]rivate rights of action to enforce federal law must be created by Congress," *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), and "[t]here must be clear evidence of Congress's intent to create a cause of action," *Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002) (citation omitted). Where the necessary intent is absent, "a cause of action does not exist and courts may not create one." *Sandoval*, 532 U.S. at 286-87.

In Section 702, Congress set forth various requirements for Government surveillance under that authority, but it left oversight and enforcement of those requirements to *ex parte* proceedings before the FISC—in which an electronic communication service provider can challenge a directive issued under 50 U.S.C. § 1881a(i)(1)—not suits by private parties who claim to have been subject to surveillance.  Section 702 provides no private cause of action to challenge purported surveillance of the party bringing suit. *See generally* 50 U.S.C. § 1881a. *Cf. ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 469 (D.C. Cir. 1991) ("No provision in FISA authorizes private actions in the federal district courts to enjoin surveillance on the basis of statutory violations."). To the extent Plaintiffs seek monetary

damages, there also is no waiver of sovereign immunity that would allow a claim asserting a violation of Section 702. *Cf. Gill v. DOJ*, No. 15-cv-824 (RMC), 2016 WL 3982450, at *8 (D.D.C. July 22, 2016) (holding that no applicable waiver of sovereign immunity permitted plaintiff's putative FISA claim because, while 18 U.S.C. § 2712 provides a cause of action for monetary damages for violations of FISA § 106(a), it did not provide a cause of action for violations of a different FISA provision, invoked by plaintiff), *aff'd on other grounds*, 875 F.3d 677 (D.C. Cir. 2017); *Fikre v. FBI*, 142 F. Supp. 3d 1152, 1169 (D. Or. 2015) (holding that, while § 2712 authorizes a cause of action for damages for violations of FISA § 106(a), there was no valid waiver of sovereign immunity for plaintiff's claims alleging other FISA violations).[8]

---

[8] Title 18, Section 2712 of the United States Code provides, in relevant part, that a "person who is aggrieved by any willful violation of . . . sections 106(a), 305(a), or 405(a) of [FISA] . . . may commence an action in United States District Court against the United States to recover money damages." 18 U.S.C. § 2712(a). The FISA sections referenced in § 2712 place restrictions on the use of information collected under FISA, including that such information only be used for "lawful purposes." *See* 50 U.S.C. §§ 1806(a), 1825(a), 1845(a). Plaintiffs here have not invoked § 2712, and do not assert a claim based on alleged unlawful use of FISA information or plausibly allege any facts supporting standing to raise such a claim. Nor do Plaintiffs assert that they filed an administrative claim in compliance with the provision's exhaustion requirement. *See* 18 U.S.C. § 2712(b)(1). Thus, the Court would lack jurisdiction over any such claim on multiple grounds. *See supra* Part I; *Grady v. DOD*, No. 16-14293, 2017 WL 35531, at *5 (S.D. Fla. Jan. 4, 2017) (holding that court lacked jurisdiction over the plaintiff's "vague claim under FISA" because no administrative claim had been filed as required by § 2712(b)(1)), *aff'd sub nom. Grady v. U.S. Gov't*, 702 F. App'x 929 (11th Cir. 2017).

Accordingly, to the extent Plaintiffs purport to bring a claim under FISA itself, their claim should be dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against the Government Defendants should be dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: February 9, 2024                   Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

/s/ Elizabeth Tulis
ELIZABETH TULIS
Trial Attorney (N.Y. Bar)
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L St. NW
Washington, DC 20005
Tel: (202) 514-9237
Fax: (202) 616-8470
E-mail: elizabeth.tulis@usdoj.gov

*Counsel for the Government Defendants*

## <u>LOCAL RULE 7.1(F) CERTIFICATE</u>

I HEREBY CERTIFY that this memorandum contains 4208 words as determined by Microsoft Word's word count and complies with the word limit requirements set forth in Local Rule 7.1(F).


<u>/s/ Elizabeth Tulis</u>