**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**JESUS RIVERA**, et al.,

     **Plaintiffs**,

v.                     **Case No. 3:23cv24547-TKW-HTC**

**FEDERAL BUREAU OF**
**INVESTIGATION**, et al.,

     **Defendants**.

_____/

## ORDER GRANTING MOTION TO DISMISS

This case is before the Court based on Defendants' motion to dismiss.  Upon due consideration of the motion (Doc. 10) and its attachment, Plaintiffs' response in opposition (Doc. 11) and its attachments, and the complaint (Doc. 1), the Court finds that the motion is due to be granted.

### Background

Plaintiffs were among those who gathered in Washington, D.C., on January 6, 2021, "to exercise their expression of free speech …, to peaceably assemble, and to petition their government for redress of grievances over the 2020 presidential election and government corruption in general."  Plaintiffs participated in the

"peaceful demonstrations at the U.S. Capitol and the Ellipse near the White House," but they "did not commit any felonies or engage in any violence."[1]

Plaintiffs claim that they were "subjected to unconstitutional, illegal surveillance" after the events of January 6 in violation of Section 702 of the Foreign Intelligence Surveillance Act (FISA)[2] and the First and Fourth Amendments.  They base this claim on public statements made by the Director of the Federal Bureau of Investigation (FBI) about targeting the January 6 protestors for investigation and prosecution and an April 2022 opinion of the Foreign Intelligence Surveillance

---

[1]  The Court accepts the latter allegation as true even though it is hard to square with the Defendants' representation that several of the Plaintiffs were criminally charged for their participation in the "riot" at the Capitol on January 6, *see* Doc. 10 at 6 n.3, and the portion of the prayer for relief in the complaint requesting that "any prosecutions and/or convictions concerning Plaintiffs and Members of the Class be ordered terminated, overturned and/or dismissed as a result of the illegal surveillance as pled herein which resulted, in whole or in part, from the use of illegally obtained evidence which was used to indict, try, convict and sentence them," Doc. 1 at 16. However, that portion of the prayer for relief is patently frivolous because this Court has no authority to order that criminal prosecutions in another court be dismissed or terminated or to grant postconviction relief to defendants convicted in another court—particularly not in a civil lawsuit. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (holding that the validity of a federal conviction may not be collaterally attacked in a *Bivens* action seeking money damages); *Morris v. Dep't of Homeland Sec.*, 2007 WL 136703, at *2 (M.D. Ala. Jan. 16, 2007) ("A plaintiff … cannot seek declaratory or injunctive relief relating to his confinement and/or conviction in a § 1983/ *Bivens* action.").

[2]  Section 702 was enacted in 2008 and "create[ed] a new framework under which the Government may seek the [Foreign Intelligence Surveillance Court]'s authorization of certain foreign intelligence surveillance targeting the communications of non-U.S. persons located abroad." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 404 (2013). "Surveillance under [Section 702] may not be intentionally targeted at any person known to be in the United States or any U.S. person reasonably believed to be located abroad." *Id.* at 405 (citing 50 U.S.C. §1881a(b)(1)–(3)). Additionally, Section 702 includes restrictions on "querying" the information collected pursuant to authorized surveillance to obtain information about Americans, and it generally prohibits the FBI from accessing the contents of any queried communications in a criminal investigation unrelated to "the national security of the United States." *See* 18 U.S.C. §1881a(f).

Court (FISC) documenting several instances in which the FBI misused Section 702 "to 'query' – or search – names of individuals who were even suspected of being on the Capitol grounds during the January 6, 2021 protest."

In September 2023, Plaintiffs filed this putative class action against the FBI, the Department of Justice (DOJ), and FBI Director Christopher Wray and Attorney General Merrick Garland in their individual and official capacities, seeking money damages and injunctive relief.  The complaint asserts three claims: First Amendment Retaliation under *Bivens*[3] against Wray and Garland in their individual and official capacities ("First Cause"); Fourth Amendment Violation under *Bivens* against Wray and Garland in their individual and official capacities ("Second Cause"); and Violation of Section 702 of FISA against all Defendants ("Third Cause").

The FBI, DOJ, and the individual defendants (Wray and Garland) in their official capacities responded to the complaint with a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[4]  The motion is fully briefed and is ripe for a ruling. No hearing is needed to rule on the motion.

---

[3] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[4] The motion to dismiss was not filed on behalf of the individual defendants in their individual capacities because, according to the motion, the individual defendants have not been properly served in their individual capacities.  *See* Doc. 10 at 1 n.1.  The Court did not overlook Plaintiffs' contention that the individual defendants have been properly served in their individual capacities, *see* Doc. 11 at 11-12, but even if that is true, it does not change the fact that the motion was only filed on behalf of the individual defendants in their official capacities.

## Standard of Review

Where, as here, a Rule 12(b)(1) motion raises a "facial" challenge to the Court's subject-matter jurisdiction, the Court must accept the allegations in the complaint as true and determine whether the operative complaint "has sufficiently alleged a basis of subject matter jurisdiction." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). Similarly, when reviewing a Rule 12(b)(6) motion, the Court must accept the well-pled facts in the operative complaint as true and view them in the light most favorable to the plaintiff. *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

To survive a motion to dismiss under Rule 12(b)(6), the operative complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). However, "[m]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

4

**Analysis**

Defendants argue that the claims against them should be dismissed because (1) Plaintiffs have not plausibly alleged standing; (2) the United States has not waived sovereign immunity for claims for money damages for constitutional violations;[5] and (3) Section 702 does not create a private cause of action for injunctive relief or waive sovereign immunity for money damages.  Each argument will be addressed in turn.

*Standing*

Defendants argue that Plaintiffs have not plausibly alleged standing because their claimed injury—that they have been or will be subject to surveillance in violation of Section 702—is speculative.   Plaintiffs respond that they have sufficiently alleged an injury because the April 2022 FISC opinion establishes that Defendants misused Section 702 to query the names of Americans who were in Washington, D.C., on January 6.  The Court agrees with Defendants.

"[S]tanding consists of three elements: [1] the plaintiff must have suffered an injury in fact, [2] the defendant must have caused that injury, and [3] a favorable decision must be likely to redress it."  *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–

---

[5]   Causes One and Two explicitly assert constitutional claims, but it appears that Cause Three may also be asserting constitutional claims because it alleges that Defendants "violated Plaintiffs' constitutional rights by illegally and unconstitutionally surveilling them."

61 (1992)).  At the motion-to-dismiss stage, the plaintiff has the burden of alleging facts that "plausibly" establish each element.  *Id.*

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61 (cleaned up).  To establish such an injury, a plaintiff seeking damages must plausibly allege that "an alleged *past* harm occurred," *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) (emphasis in original), and a plaintiff seeking injunctive relief must plausibly allege that "a *future* injury is imminent—that there is 'a sufficient likelihood that he [or she] will be affected by the allegedly unlawful conduct in the future,'" *id.* (quoting *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004)) (alterations and emphasis in original); *see also Lujan*, 504 U.S. at 565 n.2 ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'"). "'[A]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original).

In *Clapper*, the Supreme Court considered whether a group of plaintiffs had established an "imminent" injury "fairly traceable" to government surveillance

under Section 702. *See id.* at 408. The Court held that the plaintiffs failed to demonstrate an injury that was "certainly impending" because their allegations of future harm from unlawful government surveillance were based on a "speculative chain of possibilities." *Id.* at 410.

Likewise, here, Plaintiffs rely on a speculative chain of possibilities to support their claimed injury. Specifically, for Plaintiffs communications to have been subject to surveillance, (1) they would have had to have communicated with a person outside of the United States, (2) that person would have had to have been targeted under Section 702, (3) Defendants would have had to have queried the communications collected under Section 702 using Plaintiffs names, and (4) Defendants would have had to have reviewed the communications. The complaint does not include sufficient allegations to make any of those facts plausible— particularly since the complaint does not even allege that Plaintiffs have communicated with or that they plan to communicate with persons outside the United States, much less that their foreign contacts have been or will be targeted under Section 702. Thus, Plaintiffs have not plausibly alleged that they have suffered an injury in fact. *Accord Corsi v. Muller*, 422 F. Supp. 3d 51, 63–64 (D.D.C 2019) (dismissing suit raising claims under Section 702 because the plaintiffs' alleged injuries were based on a chain of inferences even more speculative than those in *Clapper*), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020); *Montgomery v. Comey*, 300 F.

Supp. 3d 158, 168 (D.D.C. 2018) (same), *aff'd*, 752 Fed. App'x 3 (D.C. Cir. 2019); *Klayman v. Nat'l Sec. Agency*, 280 F. Supp 3d 39, 56–57 (D.D.C. 2017) (same), *aff'd*, 759 F. App'x 1 (D.C. Cir. 2019).[6]

The Court did not overlook Plaintiffs' argument that the April 2022 FISC opinion[7] establishes that January 6 protestors were subject to surveillance in violation of Section 702. However, that opinion merely found that the FBI violated its standards for querying FISA information on several occasions by running searches on individuals who were suspected to have been involved in "the Capitol breach." The opinion does not identify the individuals who were queried, and it does not support the inference that Plaintiffs were queried—or that they will be queried in the future—simply because they "happened to be in the District of Columbia … on January 6, 2021." Moreover, the opinion describes the steps that the FBI has implemented to enhance compliance with its querying standards in the future, which

---

[6] Plaintiffs' attorney represented the plaintiffs these cases—and numerous others against federal officials that were dismissed for lack of standing—*see*, *e.g.*, *Freedom Watch, Inc. v. Sessions*, 729 F. App'x 7 (D.C. Cir. 2018); *Klayman v. President of the United States*, 689 F. App'x 921 (11th Cir. 2017); *Klayman v. Clinton*, 668 F. App'x 351 (11th Cir. 2016); *Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015)—so he should know what is necessary to establish standing—both generally and in the context of a claim under Section 702.

[7] The opinion was referenced in the complaint and a copy of the opinion was attached to Defendants' motion to dismiss, so the Court can consider it when ruling on the motion. *See Edwards v. Dothan City Sch.*, 82 F.4th 1306, 1311 (11th Cir. 2023) (explaining that the court generally does not consider anything beyond the face of the complaint and the documents attached to it when ruling on a motion to dismiss but that the court may consider documents attached to the motion when "(1) the plaintiff mentions the document(s) at issue in the complaint; (2) the document is central to the claim; and (3) … the document's authenticity is unquestioned").

makes it even less likely that Plaintiffs will be affected by Defendants' allegedly unlawful conduct in the future.

In sum, because the allegations of injury in the complaint are just as (if not more) speculative as the allegations in *Clapper* and the other cases cited above in which the plaintiffs were found not to have standing to challenge alleged violations of Section 702, Plaintiffs have not plausibly alleged that they have standing to assert the claims in the complaint. Thus, the claims against the FBI, DOJ, and the individual defendants in their official capacities must be dismissed for lack of subject-matter jurisdiction.

### *Constitutional Claims*

Next, Defendants argue that the Court lacks subject-matter jurisdiction over the constitutional claims asserted in the complaint because sovereign immunity has not been waived for those claims insofar as they are seeking money damages against the FBI, DOJ, and the individual defendants in their official capacities. Plaintiffs respond that *Bivens* allows them to pursue constitutional claims for money damages. The Court agrees with Defendants.

"It is well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued." *Zelaya v. United States*, 781 F.3d 1315, 1321–22 (11th Cir. 2015). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter

jurisdiction over the suit." *Id.* at 1322 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475–76 (1994)).

The United States has not waived its sovereign immunity for constitutional claims seeking money damages from it or its agencies. *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1345 (11th Cir. 2007); *Boda v. United States*, 698 F.2d 1174, 1176 (11th Cir. 1983). Thus, if any of the constitutional claims in the complaint are being asserted against the FBI and DOJ, the Court would not have subject-matter jurisdiction over those claims.

The Court did not overlook Plaintiffs' argument that their constitutional claims are permissible under *Bivens*. However, it is well established that a *Bivens* action cannot be brought against a federal officer in his <u>official</u> capacity. *See Horne v. SSA*, 359 F. App'x 138, 143 (11th Cir. 2010) ("While a plaintiff may bring a *Bivens* action against a federal officer in his individual capacity, a plaintiff may not bring a *Bivens* action against a federal agency or a federal officer acting in his official capacity."). Thus, to the extent the constitutional claims in the complaint are being asserted against Wray and Garland in their <u>official</u> capacities, the Court lacks subject-matter jurisdiction over those claims.[8]

---

[8] The Court need not consider at this point whether the complaint states plausible *Bivens* claims against Wray or Garland in their <u>individual</u> capacities because that issue is not currently before the Court. However, the Court notes that the Supreme Court has expressly held that "there is no *Bivens* action for First Amendment retaliation," *Egbert v. Boule*, 596 U.S. 482, 499 (2022), and it has also been reticent to recognize a *Bivens* remedy in contexts different from the cases in which it has previously recognized such a remedy, *id.* at 491–92.

Accordingly, the constitutional claims in the complaint are due to be dismissed insofar as they seek money damages from the FBI, DOJ, or Wray and Garland in their official capacities.

*Section 702 Claim*

Finally, Defendants argue that the Court lacks subject-matter jurisdiction over the claim asserted in Cause Three of the complaint because Section 702 does not provide a private cause of action to enjoin surveillance nor does it waive sovereign immunity for claims for money damages. The Court agrees.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). The critical question is whether the statute "displays an intent to create not just a private right but also a private remedy." *Id.* (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). Absent such, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

"No provision in FISA authorizes private actions in the federal district courts to enjoin surveillance on the basis of statutory violations." *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 469 (D.C. Cir. 1991). Moreover, although other provisions

11

in FISA allow for the recovery of money damages, *see, e.g.*, 50 U.S.C. §1810,[9] Section 702 does not.  Indeed, there is nothing in Section 702 that displays an intent to create a private right or remedy for alleged violations.

The Court did not overlook Plaintiffs' argument that Congress provided a private cause of action and waived sovereign immunity for claims under FISA in 18 U.S.C. §2712,[10] but that statute does not help Plaintiffs here for two reasons.  First, §2712 only waives sovereign immunity for violations of certain sections of FISA, and Section 702 is not one of those sections.  *See Al-Haramain Islamic Found.*, 705 F.3d at 853 (finding that §2712 did not waive sovereign immunity for claims under 50 U.S.C. §1810 because §1810 was not one of the sections of FISA that was specifically listed in §2712).  Second, the complaint does not purport to assert a claim under §2712 because that statute is not referenced anywhere in the complaint.

Moreover, even if the complaint could somehow be construed as having asserted a claim under §2712 rather than Section 702, it would still be subject to

---

[9]  Section 1810 creates a cause of action for "[a]n aggrieved person … who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809," but several courts have found that this section does not waive sovereign immunity as to the federal government.  *See Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 855 (9th Cir. 2012); *Wikimedia Found. v. Nat'l Sec. Agency*, 427 F. Supp. 3d 582, 784–85 (D. Md. 2018); *Whitaker v. Barksdale Air Force Base*, 2015 WL 574697, at *7 (W.D. La. 2015).

[10]  This statute provides in pertinent part that "[a]ny person who is aggrieved by any willful violation of ... sections 106(a), 305(a), or 405(a) of [FISA] may commence an action in United States District Court against the United States to recover money damages."

dismissal for lack of subject-matter jurisdiction because Plaintiffs have not alleged that they exhausted their administrative remedies by presenting their claim "to the appropriate department or agency under the procedures of the Federal Tort Claims Act." 18 U.S.C. §2712(b)(1); *see also Grady v. Dep't of Def.*, 2017 WL 35531, at *5 (S.D. Fla. Jan. 4, 2017) (holding that the court lacked jurisdiction over the plaintiff's "vague claim under FISA" because no administrative claim had been filed as required by § 2712(b)(1)), *aff'd sub nom. Grady v. U.S. Gov't*, 702 F. App'x 929 (11th Cir. 2017); *Iqbal v. F.B.I.*, 2012 WL 2366634, at *6 (M.D. Fla. June 21, 2012) (same). On this issue, the Court did not overlook Plaintiffs argument that exhaustion would have been futile, but futility is not an exception to the exhaustion requirement under the Federal Tort Claims Act (FTCA), and even if it was, the complaint does not include any allegations showing that exhaustion would be futile. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Ferrer v. Yellen*, 2014 WL 12651189, at *4 (S.D. Fla. Oct. 2, 2014) (holding that futility is not an exception to the FTCA's exhaustion requirement).[11]

---

[11] The district court case cited by Plaintiffs for the proposition that a plaintiff need not exhaust administrative remedies if it would be futile to do so involved an exhaustion requirement in a District of Columbia personnel law, not the FTCA. *See Johnson v. Dist. of Columbia*, 368 F. Supp. 2d 30 (D.D.C. 2005), *aff'd*, 552 F.3d 806 (D.C. Cir. 2008). Moreover, the court rejected the plaintiff's futility argument in that case because the plaintiff had not pled any facts to show that the exhaustion of administrative remedies would be futile. *Id.* at 50–51.

Accordingly, the Section 702 claim in Cause Three of the complaint is due to be dismissed for lack of subject-matter jurisdiction.

## Leave to Amend

Where, as here, a complaint is dismissed for lack of subject-matter jurisdiction, the dismissal is without prejudice. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."). However, the dismissal of a complaint without prejudice can be with or without leave to amend—depending on whether a better-pled amended complaint could cure the jurisdictional deficiencies.

The Court is not required to grant leave to amend to a plaintiff who is represented by counsel if the plaintiff does not request leave to amend. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Here, in their response to the motion to dismiss, Plaintiffs make a passing request for leave to amend their complaint if the Court determined that they had not sufficiently alleged a claim under §2712. *See* Doc. 11 at 10. Thus, the Court will consider whether to grant Plaintiffs leave to file an amended complaint.

Leave to amend should be "freely give[n] … when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend can be denied "when the complaint as amended would still be properly dismissed or be immediately subject to summary

14

judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985))).

Here, even if Plaintiffs could somehow overcome the pleading deficiencies regarding standing, their claims against the FBI, DOJ, and Wray and Garland in their official capacities would still be subject to dismissal for lack of subject-matter jurisdiction because, as discussed above, (1) sovereign immunity has not been waived for constitutional claims against federal agencies or federal officials in their official capacities, (2) there is no private right of action for injunctive relief under Section 702, and (3) sovereign immunity has not been waived for claims for money damages under Section 702. Moreover, any newly asserted claim under §2712 would be subject to dismissal for lack of subject-matter jurisdiction because Plaintiffs have not exhausted their administrative remedies. *See Caldwell v. U.S. Dep't of Veterans Admin.*, 2015 WL 2356021, at *11 (M.D. Fla. May 15, 2015) (denying leave to amend as futile because the plaintiff failed to exhaust his administrative remedies as required by the FTCA before filing suit).

Accordingly, Plaintiffs will not be granted leave to amend their claims against the FBI, DOJ, or Wray and Garland in their official capacities.

15

**Conclusion**

In sum, for the reasons stated above, it is **ORDERED** that Defendants' motion to dismiss (Doc. 10) is **GRANTED**, and all of the claims against the FBI, DOJ, and Wray and Garland in their official capacities are **DISMISSED without prejudice and without leave to amend** for lack of subject-matter jurisdiction.

**DONE and ORDERED** this 27th day of March, 2024.

_____

**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

16